WILSON AND COMPANY, an Own Risk Insurance Carrier, Petitioner,

v.

Carl REED and The State Industrial Court of Oklahoma, Respondents.

No. 51985.

Court of Appeals of Oklahoma, Division No. 2.

Sept. 18, 1979.

Rehearing Denied Oct. 5, 1979.

Certiorari Denied Nov. 26, 1979.

Released for Publication by Order of Court of Appeals Nov. 29, 1979.

Mort G. Welch, Abowitz & Welch, Oklahoma City, for petitioner.

Richard A. Bell, Norman, for respondents.

BRIGHTMIRE, Judge.

Was the compensation award to claimant—for 40% permanent partial disability to his body resulting from coronary problems—a mistake made by the State Industrial Court? We hold it was not.

I

Carl Reed, a "well developed, well nourished," 28-year-old man, had worked as a laborer for Wilson and Company for about five years when on May 3, 1976 he accidentally overstrained himself while transport-

ing 30 pound hog heads from a conveyor to a table for cheek stripping. About noon on that day Reed had begun to work faster and suddenly experienced a pain in his upper left chest which radiated into his left shoulder and arm. The plant physician advised him to go home, rest, and see his physician as soon as possible. Once home claimant tried to rest but episodes of pain kept reoccurring throughout the night prompting his physician to hospitalize him the next morning. His heart ailment was treated with intensive care for several days, and when he was released from the hospital a week later a cardiologist told him his heart condition disabled him from the performance of heavy labor. Medically speaking the diagnosis was that claimant "demonstrates evidence of disability by reason of arteriosclerotic heart disease with ECG evidence of a myocardial infarction . . . [a] condition . . . aggravated by strenuous [on the job] effort . . . on May 3, 1976 . . . [resulting in his being] temporarily and totally disabled . . . and in need of more . . . treatment . . . ." Reed was placed on Inderal, Nitroglycerin and Tylenol.

On the basis of this diagnosis the trial judge found Reed had sustained a compensable accidental injury on May 3, 1976, as a result of which he was "temporarily totally disabled and in need of further medical treatment," and entered a 300 week temporary compensation order December 6, 1976, against Wilson. The employer did not exercise its right to appeal the order but complied with it.

A year later a hearing was held to determine whether the accidental heart injury had resulted in any permanent disability. At this hearing Reed placed in evidence two medical reports. One was an updated report of the physician whose diagnosis—of arteriosclerosis—had been previously accepted by the court when it made the temporary disability award. In his new report the doctor mentioned that further testing had revealed what was probably an "aneurysmal protrusion of the posterior leaflet of the [heart's] mitral valve" into the "left atrium in systole"—a defect of unknown etiology. Based upon the history given him and this new medical evidence the medical person retreated from his previous diagnosis of arteriosclerotic heart disease with infarction and concluded that the mitral valve "condition [had] been aggravated by strain on the job" May 3, 1976, resulting in 25% permanent partial disability to Reed's body in terms of his capacity to perform ordinary manual labor.

In the other report submitted as evidence at the second hearing, the physician opined that Reed had "sustain[ed] injury to his heart [on May 3, 1976] by reason of aggravation and additional injury imposed on what was probably a congenital malformation of his heart" culminating in claimant having a 65% permanent partial disability.

The trial judge found Reed was 40% permanently disabled and ordered Wilson to pay $10,000 at $50 a week. Wilson appealed to the court sitting en banc complaining that the order is (1) contrary to the provisions of the Workmen's Compensation Law and (2) unsupported by competent evidence. The court affirmed the trial judge's decision and Wilson petitions this court to vacate the order on the same two grounds.

II

In its brief Wilson's singular contention is that "[n]o competent evidence supports the finding of accidental heart injury." The argument is that under *Haynes v. Pryor High School,* Okl., 566 P.2d 852 (1977) and its ancestry there must be evidence of a sudden, unusual or unexpected external occurrence capable of producing internal injury coupled with medical proof of internal pathological changes secondary to the external event, before the court is authorized to find the existence of a compensable heart injury. Such evidence, contends Wilson, was not presented.

Reed's response is that Wilson's tardy attack on the adjudicated jurisdictional fact comes too late, and, relying on *Hannah v. Oklahoma State Highway Commission,* 172 Okl. 221, 45 P.2d 53 (1935), he contends the decision was an appealable one and petition-

er's failure to make it the subject of an appeal at that time resulted in it becoming final and now beyond attack. Wilson concedes the import of *Hannah* but insists the circumstances here—where, according to Wilson, claimant "completely changed his theory of accidental injury between the first and second hearings"—brings the case within an exception to the res judicata rule ordained in *Cowger v. Wall,* 198 Okl. 616, 181 P.2d 252 (1947); *Harjo v. Johnston,* 187 Okl. 561, 104 P.2d 985 (1940); *Marks v. Stevens,* 72 Okl. 186, 179 P. 7 (1919): and *Midland Savings & Loan Co. v. Sutton,* 55 Okl. 84, 154 P. 1133 (1916). We have examined these cases, however, and find that they discuss recognized attributes of the finality doctrine not exceptions to it. One applies a kindred principle—estoppel by judgment. None are factually pertinent.[1]

The *Hannah* concept is dispositive of the issue. The fact that one of claimant's doctors may have changed his "theory" as to the exact pathology involved in the established heart defect is not "new matter" such as would, under one case cited by Wilson,[2] prevent the principle of estoppel from applying in this instance. The determinative question is whether the vital organ was damaged accidentally while Reed heaved hog heads for Wilson and that fundamental operative issue was resolved by

the fact finder on the basis of competent medical and cogent circumstantial evidence in December 1976. Wilson's acquiescence in the finding then hastened its finality and encapsulized it with immunity from later attack—direct or otherwise.

The sole unresolved factual issue in December 1977 was the extent of permanent disability resulting from the coronary impairment. And that issue, like the first one, was also decided on the basis of competent evidence.

Affirmed.

BACON, P. J., and NEPTUNE, J., concur.

---

1. Wilson also refers to another "exception" as being a "waiver" of the res judicata defense by a party entitled to rely on it who "asserts a position in subsequent proceedings . . . so inconsistent with . . . the prior judgment as to amount to an election to abandon the judgment . . . ." The concept is premised on the theory that res judicata is a defense which can be waived by failure to timely assert or by voluntarily reopening the previously decided question. Whatever else might be said about the contention it is clear that in this case Reed did not, after the first hearing, assert a position inconsistent with the one maintained initially. Reed's proffer of a physician's report describing different underlying pathology and an altered theory as to the mechanism of the accidental coronary injury cannot by any stretch of the imagination be considered an election by Reed to abandon the court's earlier finding, nor even to be an assertion inconsistent with a previous one. Actually, the physician did not change his conclusion in his later report but merely updated the pathological data regarding claimant's injury with information derived from interim testing.

2. *Midland Savings & Loan Co. v. Sutton,* 55 Okl. 84, 154 P. 1133 (1916). It holds quite logically that a judgment cannot bar a later action founded on facts which did not come into existence until after the earlier adjudication. Res judicata bars retrial only of facts determined or of existing ones which could have been. Here the facts underlying Reed's claim—his physical condition, the involved pathology, the accidental event—were all in existence at the time of the first hearing. Merely because the correct pathology was not discovered before the first hearing it does not follow that it was nonexistent at that time. It was a physician's theory that changed not the facts. A judgment rests on facts not theory.